1
2
3
4
5
6

CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
Tel: (858) 375-7385; Fax:(888) 422-5191
phylg@potterhandy.com

7
8
9
10

Michelle Uzeta, Esq., SBN 164402
uzetalaw@gmail.com
michelleu@potterhandy.com
710 S. Myrtle Ave., #306
Monrovia, CA 91016
Ph: (858) 375-7385

11
12

Attorneys for Plaintiffs

13

UNITED STATES DISTRICT COURT

14

CENTRAL DISTRICT OF CALIFORNIA

15

16
17
18

**Markus    Hopkins    and    Ashley O'Keefe,**

    Plaintiffs,

19

    v.

20
21
22

**Double T Management, and Does 1-10 inclusive,**

    Defendants.

23
24
25
26
27
28

Case No.

**Complaint for Injunctive Relief and Damages for Violations Of**:

1. The Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 et seq.;
2. California Fair Employment and Housing Act, Cal. Gov't Code § 12955 et seq.;
3. California Unruh Civil Rights Act, Cal. Civ. Code § 51;
4. California Disabled Persons Act, Cal. Civ. Code § 54.1(b);
5. California Bus. & Prof. Code § 17200; and
6. Negligence

1

# INTRODUCTION

1.      This is an action for injunctive relief and damages against Double T Management and Does 1-10, inclusive (collectively "Defendants"), for housing discrimination based on the disability of Plaintiff Ashley O'Keefe ("O'Keefe").

2.      O'Keefe and her husband, Mr. Markus Hopkins (individually referred to herein as "Hopkins," and collectively with O'Keefe as "Plaintiffs"), allege that Defendants denied Plaintiffs housing opportunities due to O'Keefe's need for and use of assistance/service dogs.

3.      This action is brought pursuant to the Fair Housing Amendments Act ("FHAA"), 24 U.S.C. § 3601 et seq., as well as related California statutes. Plaintiffs also allege negligence.

4.      Through this action, Plaintiffs seek injunctive relief, actual and punitive damages, reasonable attorney's fees, and costs of suit.

# JURISDICTION & VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United States, specifically the Fair Housing Act, 42 U.S.C. §§ 3601-3619.

6.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiffs' state law claims because they are related to Plaintiffs' federal claims and arise out of a common nucleus of operative facts. Plaintiffs' state and federal claims form part of the same case or controversy under Article III of the United States Constitution.

7.      Venue is proper in the Central District of California under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to Plaintiffs' claims occurred in this district, the property that is the subject of the action is situated in this district, and the Defendants conduct business in this district.

Complaint

**PARTIES**

8.    O'Keefe is, and at all times relevant herein was, a resident of the State of California.

9.    O'Keefe is, and at all times relevant herein was, an individual with mental health disabilities that significantly limit her ability to eat, care for herself, concentrate, think, communicate and control her mood.

10.    Hopkins is, and at all times relevant herein was, a resident of the State of California and the husband of O'Keefe.

11.    Defendant Double T Management is, and at all times relevant to herein was, the owner, operator, and/or manager of the apartment residence located at 2449 Via Campesina, Apartment 2449 in the City of Palos Verdes Estates, California (hereinafter "Rental Property").

12.    Plaintiffs are currently unaware of the true identities of Does 1-10, inclusive, and will seek leave to amend their complaint when their true names, capacities, connections, and responsibilities are ascertained.

13.    Plaintiffs are informed and believe, and on that basis allege that each of the Defendants is the agent, ostensible agent, alter ego, master, servant, trustor, trustee, employer, employee, representative, franchiser, franchisee, lessor, lessee, joint venturer, parent, subsidiary, affiliate, related entity, partner, and/or associate, or such similar capacity, of each of the other Defendants, and was at all times acting and performing, or failing to act or perform, within the course and scope of such similar aforementioned capacities, and with the authorization, consent, permission or ratification of each of the other Defendants, and is personally responsible in some manner for the acts and omissions of the other Defendants in proximately causing the violations and damages complained of herein, and have participated, directed, and have ostensibly and/or directly approved or ratified each of the acts or omissions of each of the other Defendants, as herein described.

3

Complaint

**FACTUAL ALLEGATIONS**

14.    O'Keefe has been prescribed two assistance dogs.

15.    O'Keefe's assistance dogs work, provide assistance, and perform tasks for O'Keefe, related to O'Keefe's disability.

16.    O'Keefe's assistance dogs also provide O'Keefe emotional comfort and support that alleviates one or more identified symptoms or effects of her mental health disabilities.

17.    O'Keefe's assistance dogs have been individually trained to provide the following:

          a.  Grounding interactions to stabilize O'Keefe in space and time and prompt her to leave stressful or trigger situations; and

          b.  Pressure therapy to alleviate O'Keefe's anxiety, and allow her to remain calm and able to function.

18.    O'Keefe's assistance dogs also provide her with emotional comfort and support.

19.    On March 27, 2017, Plaintiffs were invited by Defendants to submit an application to lease the Rental Property from Double T Management. Plaintiffs submitted their application that same day.

20.    The application for the Rental Property does not ask tenants to disclose their disabilities.

21.    The application for the Rental Property does not ask tenants to disclose their disability-related reasonable accommodation needs.

22.    The application for the Rental Property does not ask tenants to disclose the use of or need for assistance animals.

23.    The application for the Rental Property does ask prospective tenants to identify "pets."

24.    Assistance animals are not pets.

4

Complaint

25.    On March 29, 2017, Double T Management approved the Plaintiffs for tenancy at the Rental Property.

26.    On March 29, 2017, Plaintiffs confirmed their acceptance of Defendants' offer of tenancy at the Rental Property. Plaintiffs and Defendants agreed upon an April 1, 2017 lease start date, and Defendants sent Plaintiffs a lease packet regarding the Rental Property to sign.

27.    On March 29, 2017, after receipt of the Defendant's lease packet, O'Keefe sent Defendants a detailed email asking that she be permitted to reside with her assistance dogs as a reasonable accommodation for her disabilities.  Plaintiff's email included details and photos of her dogs, a copy of her prescription, and extensive information regarding the obligations of housing providers under state and federal law to allow people with disabilities to reside with assistance dogs.

28.    Within less than one hour of receiving O'Keefe's request for accommodation, Defendants emailed O'Keefe the following abrupt response: *"This information was not on your application, and you were not forthcoming in any communications prior to our writing the lease. Therefore we are unwilling to amend the lease and are rescinding it."*

29.    Defendants refused O'Keefe's requested accommodation and accused Plaintiffs of being dishonest for not disclosing O'Keefe's need for assistance dogs earlier.

30.    Defendants failed and refused to reconsider their decision to rescind Plaintiffs' lease when asked to do so.

31.    Defendants failed and refused to engage in an interactive process with Plaintiffs regarding O'Keefe's need for reasonable accommodations for her disabilities.

32.    Defendants refused to rent to Plaintiffs solely based on O'Keefe's disability-related need for assistance dogs.

Complaint

33.    Allowing Plaintiffs to reside with O'Keefe's assistance dogs would not have imposed an undue financial burden on Defendants.

34.    Allowing Plaintiffs to reside with O'Keefe's assistance dogs would not have imposed an undue administrative burden on Defendants.

35.    Allowing Plaintiffs to reside with O'Keefe's assistance dogs would not have resulted in a fundamental alteration of the nature of Defendants' housing program or services.

36.    O'Keefe's assistance dogs did not pose a direct threat to the health and safety of others.

37.    O'Keefe's assistance dogs did not cause substantial physical damage to Defendants' property.

38.    Plaintiffs were denied a housing opportunity in a community of their choice, within their sought-after price range, and conveniently located near Hopkins' place of employment.

39.    As Defendants would no longer rent the Rental Property to Plaintiffs, Plaintiffs were forced to seek other housing.

40.    Plaintiffs were forced to look for another apartment quickly because O'Keefe was pregnant, and the couple needed to get settled as soon as possible.

41.    O'Keefe, who was pregnant at the time Defendants withdrew their tenancy offer and refused to rent to Plaintiffs, was caused extreme emotional distress by Defendants' discriminatory acts and omissions. O'Keefe was distraught, lost sleep, and experienced bouts of uncontrollable crying.

42.    Plaintiffs had to settle for another rental apartment that was smaller, of lesser quality, and in a less desirable community than the Rental Property.

43.    The apartment Plaintiffs ended up renting (hereinafter "the Apartment") did not have the space of the Rental Property, so Plaintiffs had

to store some of their belongings with relatives, causing them embarrassment and inconvenience. The remainder of their belongings had to be stored in an attic that O'Keefe could not access safely while pregnant, also causing Plaintiffs great inconvenience.

44.    Plaintiffs were forced to purchase items and appliances for the Apartment, including air conditioning units, space heaters, and air purifiers and filters. Plaintiffs would not have had to purchase these items had they been permitted to lease the Rental Property.

45.    The Apartment does not have a dishwasher, while the Rental Property did. Plaintiffs are now forced to wash everything by hand, which is ongoing inconvenience, especially with a newborn.

46.    Plaintiffs' dining table set - which would have fit in the Rental Property - did not fit in the Apartment, forcing Plaintiffs to store their existing set and purchase a smaller set.

47.    The Apartment does not provide garage parking, while the Rental Property did. Plaintiffs are forced to park on the street, which is not only less safe than garage parking, but has also resulted in Plaintiffs' cars being subject to the elements and debris.

48.    As O'Keefe's mental state is intensely intertwined with her comfort in her surroundings, Plaintiffs had to undertake numerous steps to make O'Keefe as comfortable as possible in the Apartment, and mitigate the impact of the apartment's conditions on O'Keefe's disabilities. Among other things, Plaintiffs replaced worn out and dusty blinds in the kitchen; updated unattractive and outdated ceiling light fixtures throughout the unit; repainted the walls of each room to greatly improve their poor appearance (caused by a significant amount of wear and tear); purchased and installed, highly durable and no residue contact paper to cover unattractive floor, counter, and backsplash surfaces; and purchased rugs to reduce dust emissions from

Complaint

existing carpeting that triggered O'Keefe's allergies. Not addressing these issues would have made it significantly harder for O'Keefe to function and eat, negatively impacting her pregnancy. These steps would not have been required at the Rental Property, which was in considerably better condition that the Apartment.

49.    Despite the above-mentioned steps taken by Plaintiffs, O'Keefe remains uncomfortable in the Apartment. Living there has caused her ongoing anxiety, stress and embarrassment. The neighborhood generally looks rundown, and Plaintiffs live right off of a very busy street.  Occurrences like vandalism are commonplace; it is not an ideal place to raise a family.

50.    Hopkins was also caused frustration and distress by Defendants' withdrawal of their offer to rent Plaintiffs the Rental Property. Hopkins, who works full time as an attorney, had to take time to assist O'Keefe with managing her anxiety and distress, and had to quickly find alternative housing for his growing family.

51.    On March 28, 2017, prior to offering Plaintiffs a lease of the Rental Property, Defendants ran a credit report on Hopkins. This credit report will not come off Hopkins' TransUnion credit report for two years. Had Hopkins been aware of Defendants' discriminatory policies and practices, he would not have allowed the credit report to occur.

52.    Defendants' application packet and lease packet both contain the equal housing opportunity logotype, affirmatively indicating to the public that they do not discriminate on the basis of protected characteristics, including disability.

53.    On information and belief, it is Defendants' policy and practice not to rent to individuals who use assistance dogs.

54.    As a person / entity who is in the business of renting housing accommodations, Defendants knew, or should have known that the denial of

housing accommodations based on an individual's disability-related use of an assistance animal is illegal.

55. As the direct and proximate result of Defendants' discriminatory refusal to rent the Rental Property to Plaintiffs, Plaintiffs have suffered damages, including economic loss, loss of time and effort, loss of housing opportunity, deprivation of the right to equal housing opportunity, emotional distress and attendant bodily and physical injuries/conditions, a loss of civil rights, frustration, difficulty, embarrassment and inconvenience.

56. Until the Defendants' unlawful and discriminatory behavior is remedied, Plaintiffs, and similarly situated persons, will continue to be denied full and equal use and enjoyment of housing offered by Defendants to the general public, and will suffer ongoing discrimination.

57. The unlawful practices of the Defendants as described herein were and are wanton, willful, malicious, fraudulent or oppressive; were intended to cause injury to Plaintiffs; and/or were done in conscious, callous, reckless or deliberate disregard for the federally protected rights of Plaintiffs. Accordingly, Plaintiffs are entitled to punitive damages.

58. The nature of Defendants' discrimination constitutes an ongoing violation, and unless enjoined by this Court, will result in ongoing and irreparable injury to Plaintiffs and other similarly situated persons.

## FIRST CAUSE OF ACTION
### Fair Housing Amendments Act of 1988
### 42 U.S.C. § 3601 et seq.

59. Plaintiffs hereby re-plead, restate, re-allege and incorporate by reference all the allegations contained in the preceding paragraphs above, as though fully set forth herein.

60. The Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3601 et seq., prohibits discrimination in the sale, rental, and financing of dwellings, and in other housing-related transactions, based on a number of protected characteristics, including disability.

61. O'Keefe is, and at all times relevant herein was, an individual with a disability as that term is defined by the FHAA and its implementing regulations (42 U.S.C. § 3602(h); 24 C.F.R. § 100.201).

62. The FHAA requires that housing providers modify their policies and procedures to accommodate assistance animals.

63. The FHAA does not require that a request for accommodation be made in a particular manner or at a particular time.

64. The FHAA requires that housing providers engage in an "interactive process" regarding reasonable accommodations requested by individuals with disabilities.

65. The FHAA prohibits housing providers from requiring prospective tenants to disclose their disabilities or accommodation needs pre-offer or as part of the rental application process.

66. Prospective tenants have no legal duty under the FHAA to disclose their disabilities and/or need for accommodation pre-offer or as part of the rental application process.

67. The failure of a prospective tenant to disclose their disabilities and/or need for accommodation pre-offer or as part of the rental application process is not a valid reason to deny an individual tenancy or refuse to grant their accommodation request.

68. In acting as herein alleged, Defendants have injured Plaintiffs by committing discriminatory housing practices, in violation of the FHAA. Defendants' unlawful conduct under the FHAA includes, but is not limited to:

Complaint

a. Discriminating in the rental, or to otherwise make unavailable or deny, a dwelling to Plaintiffs because of disability of the renter and/or the person associated with the renter, 42 U.S.C. §3604(f)(1);

b. Discriminating in the terms, conditions or privileges of housing, or in the provision of services or facilities in connection with such housing, 42 U.S.C. § 3604(f)(2);

c. Refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations were necessary to afford Plaintiffs equal opportunity to use and enjoy their housing, 42 U.S.C. § 3604(f)(3)(B); and

d. Coercing, intimidating, threatening, or interfering with Plaintiff in the exercise or enjoyment of rights granted or protected by FHAA, 42 U.S.C. § 3617.

69.    Plaintiffs are both "aggrieved" persons within the meaning of the FHAA. 42 U.S.C. § 3602(i)(1).    Plaintiffs were both denied housing opportunities of their choice based solely on O'Keefe's need for the assistance animals as a reasonable accommodation for her disabilities.

70.    Defendants' duties under the FHAA are mandatory and long established. Defendants are deemed to have had knowledge of their duties at all times relevant herein and were provided actual notice of such duties. Defendants' failure to comply with their fair housing obligations was willful and knowing and/or the product of deliberate indifference.

71.    Pursuant to 42 U.S.C. § 3613(c)(1) and (2), Plaintiffs pray for judgment as set forth below.

11

Complaint

**SECOND CAUSE OF ACTION**

**California Fair Employment and Housing Act**

**California Civil Code §12955 <u>et seq</u>.**

72.    Plaintiffs hereby re-plead, restate, re-allege, and incorporate by reference all the allegations contained in the preceding paragraphs above, as though fully set forth herein.

73.    The California Fair Employment and Housing Act (FEHA), Cal. Civ. Code §12955 <u>et seq</u>. prohibits discrimination in the sale, rental, and financing of dwellings, and in other housing-related transactions, based on a number of protected characteristics, including disability.

74.    O'Keefe is, and at all times relevant herein was, an individual with a disability as that term is defined by the California law. Cal. Gov. Code § 12926.

75.    The FEHA was written to conform California law on the subject of fair housing to the Federal Fair Housing Act.  Accordingly, an analysis under the FEHA mirrors an analysis under the FHAA.

76.    In acting as alleged herein, Defendants have injured Plaintiffs by committing discriminatory housing practices, in violation of FEHA. Defendants' unlawful conduct includes, but is not limited to the following:

  a. Discriminating against Plaintiffs on the basis of O'Keefe's disability, in violation of Cal. Civ. Code §12955(a);

  b. Aiding, abetting, inciting, compelling, or coercing the doing of any of the acts or practices declared unlawful by the FEHA, or attempting to do so, in violation of Cal. Civ. Code §12955(g);

  c. Discriminating against Plaintiffs in making available a transaction, or in the terms and conditions of a transaction,

Complaint

because of O'Keefe's disability, in violation of Cal. Civ. Code §12955(i); and

    d.  Otherwise making unavailable or denying a dwelling based on discrimination because of disability, in violation of Cal. Civ. Code §12955(k).

77.    Plaintiffs are both "aggrieved" persons within the meaning of the FEHA. Cal. Gov't Code § 12927(g). Plaintiffs were both denied housing opportunities of their choice based solely on O'Keefe's need for the assistance animals as a reasonable accommodation for her disabilities.

78.    Defendants' duties under FEHA are mandatory and long established. Defendants are deemed to have had knowledge of their duties at all times relevant herein and were provided actual notice of such duties. Defendants' failure to comply with their fair housing obligations was willful and knowing and/or the product of deliberate indifference.

79.    Pursuant to Cal. Civ. Code § 12989.2, Plaintiffs pray for judgment as set forth below.

**THIRD CAUSE OF ACTION**
**California Unruh Civil Rights Act**
**California Civil Code § 51 et seq.**

80.    Plaintiffs hereby re-plead, restate, re-allege, and incorporate by reference all the allegations contained in the preceding paragraphs above, as though fully set forth herein.

81.    The Unruh Civil Rights Act ("Unruh Act") provides that individuals with disabilities "are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

13

Complaint

82.    The Unruh Act has been held to apply with full force to the business of renting housing accommodations.

83.    Defendants are in the business of renting housing accommodations, and therefore must comply with the provisions of the Unruh Act.

84.    The provisions of the Unruh Act protect substantially the same rights as FHAA and are subject to the same analysis.

85.    Defendants' violation of Plaintiffs' rights under FHAA, as set out in Plaintiffs' First Cause of Action, also violates Plaintiffs' rights under the Unruh Act.

86.    Defendants' duties under the Unruh Act are mandatory and long established. Defendants are deemed to have had knowledge of their duties at all times relevant herein and were provided actual notice of such duties. Defendants' failure to comply with their fair housing obligations was willful and knowing and/or the product of deliberate indifference.

87.    Pursuant to Cal. Civ. Code § 52, Plaintiffs pray for judgment as set forth below.

**FOURTH CAUSE OF ACTION**

**California Disabled Persons Act**

**California Civil Code § 54.1(b) <u>et seq</u>.**

***(Statutory Damages and Attorney's Fees Only)***

88.    Plaintiffs hereby re-plead, restate, re-allege, and incorporate by reference all the allegations contained in the preceding paragraphs above, as though fully set forth herein.

89.    The Disabled Persons Act ("CDPA") provides that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to all housing accommodations offered for rent, lease, or

14

compensation in this state, subject to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons." Cal. Civ. Code § 54.1(b)(1).

90.    The CDPA also provides that "[a]ny person renting, leasing, or otherwise providing real property for compensation shall not refuse to make reasonable accommodations in rules, policies, practices, or services, when those accommodations may be necessary to afford individuals with a disability equal opportunity to use and enjoy the premises." Cal. Civ. Code § 54.1(b)(3)(B).

91.    A denial of equal access to housing accommodations within the meaning of the CDPA includes a refusal to lease or rent housing accommodations to an individual with a disability on the basis that the individual uses the services of a service dog. Cal. Civ. Code § 54.1(b)(6)(A).

92.    For purposes of the CDPA, the term "service dog" means a dog individually trained to the requirements of an individual with a disability, including, but not limited to, minimal protection work, rescue work, pulling a wheelchair, or fetching dropped items. Cal. Civ. Code § 54.1(b)(6)(C)(iii).

93.    O'Keefe's assistance dogs are service dogs as defined by the CDPA. As mentioned above, O'Keefe's dogs have been individually trained to provide her with grounding interactions and pressure therapy to alleviate the symptoms of her disabilities.

94.    By unlawfully denying O'Keefe's request to reside with her service dogs as a reasonable accommodation for her disabilities, Defendants violated O'Keefe's rights under the CDPA.

95.    Claims of failure to accommodate under California Civ. Code § 54.1 are analyzed under the same standards as the analogous provisions of the FHAA.  Accordingly, Defendants' violation of Plaintiffs' rights under FHAA,

15

as set out in Plaintiffs' First Cause of Action, also violates Plaintiffs' rights under the CDPA.

96.    Defendants' duties under the CDPA are mandatory and long established. Defendants are deemed to have had knowledge of their duties at all times relevant herein and were provided actual notice of such duties. Defendants' failure to comply with their fair housing obligations was willful and knowing and/or the product of deliberate indifference.

97.    Pursuant to the remedies, procedures, and rights set forth in Cal. Civ. Code § 54.3(a), Plaintiffs pray for statutory damages and attorneys' fees.

### FIFTH CAUSE OF ACTION
### Cal. Bus. & Prof. Code § 17200 et seq.

98.    Plaintiffs hereby re-plead, restate, re-allege, and incorporate by reference all the allegations contained in the preceding paragraphs above, as though fully set forth herein.

99.    Business and Professions Code 17200 et seq. (the Unfair Competition Law or "UCL") prohibits any unlawful, unfair or fraudulent business act or practice, any unfair, deceptive, untrue or misleading advertising, and any violation of Business and Professions Code 17500 et seq.

100.    Defendant violated the UCL by:

    a.    engaging in unlawful, unfair and fraudulent business acts and/or practices, namely, discriminating against O'Keefe based on her disability in the rental of housing and denying Plaintiffs a housing opportunity in the community of their choice (see Plaintiffs' First through Fourth Causes of Action); and

    b.    by engaging in unfair, deceptive, untrue or misleading advertising - namely, the inclusion of an equal housing

opportunity logotype in their application and lease packets.

101.   By reason of the foregoing, Plaintiffs have suffered economic loss, loss of time and effort, loss of housing opportunity, deprivation of the right to equal housing opportunity, emotional distress and attendant bodily and physical injuries/conditions, a loss of civil rights, frustration, difficulty, embarrassment and inconvenience.

102.   Wherefore, Plaintiffs pray for relief as set forth below.

## SIXTH CAUSE OF ACTION
### Negligence

103.   Plaintiffs hereby re-plead, restate, re-allege, and incorporate by reference all the allegations contained in the preceding paragraphs above, as though fully set forth herein.

104.   Defendants owed Plaintiffs a duty to operate the Rental Property in a manner that was free from unlawful discrimination, and to hire, train, supervise, and discipline their employees and themselves to fulfill that duty.

105.   Defendants negligently violated their duty to Plaintiffs by discriminating against them based on O'Keefe's disability and need for disability-related accommodations. Defendants' violation of that duty was the result of negligence, including but not limited to:

a. Defendants' negligent failure to train their employees and themselves regarding the requirements of state and federal fair housing laws;

b. Defendants negligent failure to hire persons who were familiar with the requirements of state and federal fair housing laws;

17

Complaint

c. Defendants' negligent failure to supervise their employees regarding compliance with the requirements of state and federal fair housing laws;

d. Defendants' negligent failure to discipline or terminate employees who failed to comply with the requirements of state and federal fair housing laws; and

e. Failure to operate the subject property in conformity with accepted industry custom and standards.

106. As the direct and proximate result of the negligence of Defendants as set forth above, Plaintiffs sustained economic loss, loss of time and effort, loss of housing opportunity, deprivation of the right to equal housing opportunity, emotional distress and attendant bodily and physical injuries/conditions, a loss of civil rights, frustration, difficulty, embarrassment and inconvenience.

107. Wherefore, Plaintiffs pray for relief as set forth below.

## PRAYER

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Issue an injunction pursuant to the FHAA, FEHA and Unruh Act:

   a. Ordering Defendants to adopt and implement objective, uniform, nondiscriminatory standards in management of properties they own and operate, including the Property; and

   b. Ordering Defendants to submit their agents and employees to fair housing training, including training on the housing rights of individuals who use assistance animals.

2. Award Plaintiffs general, compensatory, and statutory damages in an amount within the jurisdiction of this court;

3. Award Plaintiffs punitive damages according to proof;

Complaint

4.  Award Plaintiffs attorneys' fees, litigation expenses, and costs of suit, as provided by law; and

5.  Award such other and further relief as the Court may deem just and proper.

Dated:  February 26, 2018

By:  *Michelle Uzeta*
Michelle Uzeta
Attorneys for Plaintiff

19

Complaint